### HAYNES–PIPER CO., Inc., v. KINNEY.

(Circuit Court of Appeals, First Circuit.   May 22, 1912.)

#### No. 973.

SALES (§ 81*)—ORDER FOR DELIVERY—SUFFICIENCY.

Under a contract for a sale of vinegar to be ordered by the buyer for shipment before a fixed date, the buyer telegraphed the seller to "prepare for shipment balance our contract see letter following." The letter stated that the buyer had not determined how the goods would be divided between two grades and promised that he would wire as soon as able to determine. Such advice was never given. *Held*, that the telegram did not amount to an order for shipment.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 217–223; Dec. Dig. § 81.*]

In Error to the District Court of the United States for the District of Massachusetts.

Action by John J. Kinney against the Haynes-Piper Company, Incorporated. Judgment for plaintiff, and defendant brings error. Affirmed.

John E. Eaton, of Boston (Eaton & McKnight, on the brief), for plaintiff in error.

Lee M. Friedman, of Boston (Friedman & Atherton, on the brief), for defendant in error.

Before COLT and PUTNAM, Circuit Judges, and ALDRICH, District Judge.

PUTNAM, Circuit Judge. This was a suit at common law brought by Kinney, doing business as the Kinney Company, against the Haynes-Piper Company on an account for the price of a certain number of casks of cider vinegar sold and delivered according to a contract, of which we insert a copy of the essential parts:

"Memorandum of sale and purchase made this fifteenth day of December, nineteen hundred and six, by and between the Kinney Cider & Vinegar Co., Benton Harbor, Michigan, party of the first part, and the Haynes-Piper Co., Inc., of Boston, Mass., party of the second part.

"The party of the first part has sold this day to the party of the second part three thousand (3,000) barrels (average capacity about forty-six gallons each) of absolutely pure apple cider vinegar, containing not less than four (4) per cent. by weight acetic acid, and not less than one and seven-tenths (1.7) per cent. by weight of pure apple cider solids, at nine (9) cents per gallon, barrels included, f. o. b. Chicago.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

"The party of the first part agrees that the cider vinegar shall be of a marketable quality and that it will be shipped in sound cooperage only, and that this cider vinegar will fully comply with all state laws and the National Pure Food Law, known as the Food and Drug Act of 1906.

\* \* \* \* \* \* \* \* \* \*

"The party of the first part also agrees to make shipments in cars of seventy-five (75) and one hundred (100) barrels, as ordered by the party of the second part, after January 1, 1907, and before October 1, 1907, at which time this contract expires, unless otherwise extended by agreement of both parties.

\* \* \* \* \* \* \* \* \* \*

"The party of the second part agrees to order out for shipment the three thousand (3,000) barrels in cars of seventy-five (75) and one hundred (100) barrels for shipments after January 1, 1907, and before October 1, 1907."

The above contract was duly signed by the parties. A portion of the cider vinegar was shipped, and forms the subject-matter of the suit, covering the number of casks shipped at the price named therein. So far the parties were not in dispute, and a verdict was recovered for the amount thus claimed. The litigation arose over recoupment claimed by the Haynes-Piper Company for loss of market profits on 2,350 barrels not delivered. So far as this is concerned, the jury found a verdict in favor of Kinney.

The Haynes-Piper Company makes sundry questions about certain rulings of the learned judge of the District Court, but these become unimportant in the view we take of the case. Also, there were discussions whether, under the contract, the Haynes-Piper Company had to, and including, the 1st day of October to order out the vinegar according to the contract, or whether it was bound to order it out sufficiently in advance of the 1st day of October to give Kinney a reasonable time in which to ship it. In the view we take of the case this question also becomes unimportant.

The case turns on the single fact that the Haynes-Piper Company had no claim against Kinney for recoupment on account of the vinegar not delivered unless it was ordered out at least as early as the 1st day of October. We are of the opinion that, on the face of the record, as a matter of law, the 2,350 casks in dispute were not thus ordered out; so that, from any point of view, the verdict of the jury was correct. According to well-settled rules, the intervening steps became therefore unimportant.

It seems there were some negotiations looking to substituting for a portion of the shipment what are known as 4½ per cent. goods instead of the 4 per cent. goods stipulated for by the contract; but this had not reached a definite stage at the time of the correspondence, as follows:

"Postal Telegraph Commercial Cables, etc.

"12 ch r s 10. Boston, Mass., Sept. 25–07.

"Kinney Cider & Vinegar Co., Benton Harbor, Mich.

"Prepare for shipment Chicago balance our contract see letter following.
"Tel. 5:33 p. m. Haynes Piper Co."

[Letter head of Haynes-Piper Co., Inc.]

"Boston, Sept. 26, 1907.

"Kinney Cider & Vinegar Co., Benton Harbor, Mich.

"Gentlemen: In figuring up the contract, we are giving you statement according to our books on sheet attached.

"On September 25th we ordered forward the balance of the contract, 2.350 bbls. and we may determine within a day or two that we shall desire a portion of the amount to be 4½% goods. We will wire you as soon as we are able to determine. We have no advices that you have yet shipped the 300 bbls. ordered on the 21st by wire, neither have we received any acknowledgment of the despatch.

"Just as soon as we receive the freight charges on the three invoices unpaid, we will send you balance less the discount. As fast as we receive your invoices with freight prepaid and a report that the goods are O. K. we will discount every invoice.

"Please hurry forward the 300 bbls. ordered the 21st. We hope that you will attend to our shipments very promptly and send the goods forward in such shape that our customers will have no complaints to make. Please be good enough to acknowledge the receipt of our orders, which we assure you we will appreciate.

"Yours truly,                                Haynes-Piper Co.,
                                              "F. W. McCarter, Treas.
"Dictated but not revised."

[Letter head of Haynes-Piper Co., Inc.]

"Boston, Sept. 30, '07.
"The Kinney Cider & Vinegar Co., Benton Harbor, Mich.

"Gentlemen: Please refer to our order ordering out the balance of the contract for Pure Cider Vinegar, per recent letter. Please change this order to read, 1,400 barrels of 4½% goods, and the balance 950 barrels of 4% goods.

"Yours truly,            ·                    Haynes-Piper Co.,
                                              "F. W. McCarter, Treas.
"Dictated but not revised."

The letter of September 30th was not received by Kinney until October 2d, and in the course of the mail was not due until that time. It is claimed on the part of the Haynes-Piper Company that the telegram of September 25th amounted to an order according to the contract; but it is too plain that on its face it was not such an order, and this is made all the more positive by its reference to the letter which was to follow. Of course, Kinney was not in law expected to act until the letter referred to in the telegram was received; nor in due course of commercial transactions would the prior negotiations alter the position in this respect. These had not reached a definite point; and in the letter of September 26th the Haynes-Piper Company stated expressly that they had not determined how the goods would be divided between the two grades, and promised that they would wire as soon as they were able to determine. Of course, the Kinney Company would wait for that telegram, but they never received it.

Under all the circumstances, it is too plain that the goods were not in fact ordered out either in a legal or a commercial sense until October 2d, which was too late to require any further discussion.

The judgment of the District Court is affirmed, with interest; and the appellee recovers the costs of appeal.